UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTINA JOHNSON,
*Plaintiff,*

v.

MIDLAND CREDIT MANAGEMENT, INC.,
*Defendant.*

JUL 21 2026 AM 9:47
FILED - USDC - FLMD - TPA

Civil Action No. 8:26-cv-2085-KKM-NHA

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

*(Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.;*

*Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.;*

*Truth in Lending Act / Regulation Z, 15 U.S.C. § 1601 et seq., 12 C.F.R. § 1026.9;*

*Fair Credit Billing Act, 15 U.S.C. §§ 1666–1666j; Jury Trial Demanded)*

Plaintiff Kristina Johnson, appearing pro se, brings this action against Defendant Midland Credit Management, Inc. (hereinafter "MCM" or "Defendant"), as third-party debt collector and subsequent furnisher of information, and alleges as follows:

### I. JURISDICTION AND VENUE

**1.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1681p (FCRA), 15 U.S.C. § 1692k(d) (FDCPA), and 15 U.S.C. § 1640(e) (TILA/FCBA).

**2.** Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District and Plaintiff resides in Palm Harbor, Pinellas County, Florida.

### II. PARTIES

**3.** Plaintiff Kristina Johnson is a natural person and "consumer" as defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c), residing at 2329 Newton Drive, Palm Harbor, Florida 34683.

**4.** Defendant Midland Credit Management, Inc. is a Delaware corporation and "debt collector" as defined by 15 U.S.C. § 1692a(6), with its principal place of business at 350 Camino De La Reina, Suite 100, San Diego, California 92108. MCM is also a furnisher of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2, operating as a third-party collection company that purchased the accounts at issue from the original creditors.


TPA#74613
$405

**5.** At all times relevant herein, MCM regularly collected debts owed or alleged to be owed to others using instrumentalities of interstate commerce and the United States mail in its business.

### III. FACTUAL ALLEGATIONS

**A. Account No. 1 – Best Egg Personal Loan (Original Account No. 44631839)**

**6.** Plaintiff previously held a personal loan account with Best Egg, Original Account Number 44631839, opened approximately July 21, 2022, with an original outstanding balance of approximately $8,731.

**7.** During the course of the loan, Best Egg unilaterally changed the monthly payment amount that was being withdrawn from Plaintiff's account without Plaintiff's knowledge or consent. This unauthorized change to the payment terms constituted a billing error within the meaning of 15 U.S.C. § 1666(b), specifically a charge in an "incorrect amount."

**8.** Upon discovering the unauthorized change to her monthly payment amount, Plaintiff promptly initiated a stop payment on the unauthorized withdrawal and contacted Best Egg directly to report the billing error and demand correction, as is her right under the Fair Credit Billing Act, 15 U.S.C. § 1666.

**9.** Best Egg conducted a purported investigation into Plaintiff's billing dispute and wrongfully concluded that no error had occurred, refusing to correct the unauthorized payment amount. Under 15 U.S.C. § 1666(a), Best Egg was required to either correct the billing error or provide a written explanation of why no error existed. Best Egg's refusal to correct the error and its continued demand for the unauthorized payment amount violated the FCBA.

**10.** As a direct and proximate result of Best Egg's refusal to correct the billing error, Plaintiff's account became approximately two months past due through no fault of her own. Plaintiff's stop payment and dispute were lawful exercises of her rights under federal consumer protection law, and the resulting delinquency was caused entirely by Best Egg's unauthorized change to the payment amount and its refusal to correct it.

**11.** Pursuant to 15 U.S.C. § 1666a, Best Egg was prohibited from reporting the disputed amount to any credit reporting agency as delinquent during the pendency of Plaintiff's billing dispute and prior to completing the required investigation and affording Plaintiff the required cure period of not less than ten days. Best Egg violated this prohibition by reporting and charging off the account while Plaintiff's billing dispute remained unresolved.

**12.** Best Egg subsequently charged off and sold or transferred Plaintiff's account to MCM without providing Plaintiff proper advance notice and without affording Plaintiff the opportunity to cure the disputed delinquency — a delinquency that resulted directly from Best Egg's own unauthorized modification of the payment amount. No proper pre-charge-off notice was provided to Plaintiff as required under applicable consumer protection law.

**13.** MCM thereafter reported the Best Egg account to Experian, Equifax, and TransUnion as a delinquent collection account with a balance of approximately $8,731, as confirmed by Plaintiff's credit reports, without disclosing or accounting for the disputed billing history underlying the account.

**14.** On or about July 10, 2025, Plaintiff disputed this account with all three credit reporting agencies pursuant to 15 U.S.C. § 1681i, providing notice of the underlying billing dispute and unauthorized payment change that gave rise to the alleged delinquency.

**15.** Plaintiff submitted a second round of disputes with all three credit reporting agencies in December 2025, again challenging the accuracy and legal validity of MCM's continued reporting of the Best Egg account.

**16.** On March 17, 2026, Plaintiff sent MCM a Formal Notice of Dispute and Demand for Debt Validation via Certified Mail, Return Receipt Requested, demanding: (a) a complete, unbroken chain of title showing Plaintiff's specific account was purchased by MCM; (b) the original signed credit agreement bearing Plaintiff's signature; (c) a full itemized account ledger from inception to present; and (d) documentation of the original billing dispute Plaintiff raised with Best Egg regarding the unauthorized payment change.

**17.** MCM failed to produce any of the required documentation and did not provide legally sufficient validation of the Best Egg debt. Notwithstanding this failure, MCM continued to report the account as a delinquent collection item on Plaintiff's credit reports, without legal authority and in violation of the FDCPA and FCRA.

**B. Account No. 2 – Comenity Capital Bank Dell Pay (MCM Account No. 327443320)**

**18.** Plaintiff previously held a Dell Pay credit account with Comenity Capital Bank, Original Account Number ending in 8347, opened on September 7, 2022.

**19.** During the course of the account, Comenity Capital Bank changed Plaintiff's interest rate without providing the required advance written notice of at least 45 days as mandated by Regulation Z, 12 C.F.R. § 1026.9(c)(2), implementing the Truth in Lending Act, 15 U.S.C. § 1637. Under applicable law, any significant change in account terms — including an increase in the annual percentage rate — requires at minimum 45 days' prior written notice to the consumer before the change becomes effective. Comenity Capital Bank failed to provide this required notice, depriving Plaintiff of her right to reject the rate change, seek alternative credit, or make informed decisions regarding her account.

**20.** The undisclosed interest rate change directly impacted the amounts owed on the account and contributed to the financial circumstances that preceded the charge-off, all without Plaintiff's knowledge or consent.

**21.** Comenity Capital Bank charged off the account on or about April 30, 2024, with a charge-off balance of $4,879.86. The account was purportedly sold to MCM on or about May 17, 2024.

**22.** Plaintiff was not provided timely written pre-charge-off notice as required under applicable law. Plaintiff did not receive proper 30-day advance written notice prior to the charge-off and reporting of the account to the credit reporting agencies, in violation of 15 U.S.C. § 1681s-2(a) and applicable regulations.

**23.** MCM subsequently reported the Dell Pay account to Experian, Equifax, and TransUnion as a collection account with a balance of $4,879.86, without disclosing the TILA notice violation that infected the account history and without providing Plaintiff proper notice or opportunity to cure.

24. Comenity Capital Bank confirmed in writing that the Dell Pay account was sold on May 17, 2024, and directed Plaintiff to contact MCM. Comenity Capital Bank failed to provide proper pre-charge-off notification as required by law prior to the sale.

25. On or about July 10, 2025, Plaintiff timely disputed the accuracy of MCM's reporting with all three major credit reporting agencies pursuant to 15 U.S.C. § 1681i, including notice of the underlying interest rate change violation.

26. Plaintiff submitted a second round of disputes with all three credit reporting agencies in December 2025, again challenging the accuracy and legal basis of MCM's reporting of the Dell Pay account.

27. On March 17, 2026, Plaintiff sent MCM a Formal Final Notice of Dispute and Demand for Debt Validation via Certified Mail, Return Receipt Requested, demanding: (a) a complete, unbroken chain of title showing Plaintiff's individual account was specifically purchased by MCM; (b) the original signed credit agreement bearing Plaintiff's signature; (c) a full itemized account ledger from zero balance to present; (d) all change-in-terms notices issued by Comenity Capital Bank regarding interest rate changes; and (e) verification of accuracy of all information reported to the credit bureaus.

28. MCM responded asserting its records were "accurate" but failed to produce the legally required documentation. Specifically, MCM could not produce an original signed contract, an individualized bill of sale identifying Plaintiff's specific account, any change-in-terms notices from Comenity Capital Bank, or documentation addressing the TILA violation that preceded the charge-off.

29. Despite failing to properly validate the debt, MCM continued to report the alleged debt to all three major credit reporting agencies as delinquent, causing ongoing and significant harm to Plaintiff's credit standing and financial opportunities.

## C. MCM's Role as Third-Party Collector and Its Independent Obligations

30. MCM is a third-party debt collection company that purchases charged-off consumer accounts and thereafter acts as both a debt collector under the FDCPA and a furnisher of information under the FCRA. MCM assumed both roles with respect to the Best Egg and Dell Pay accounts.

31. As a purchaser and successor-in-interest on both accounts, MCM acquired the accounts with knowledge, or constructive knowledge, that: (a) the Best Egg account was charged off and sold while a billing dispute initiated by Plaintiff regarding an unauthorized payment change remained unresolved; and (b) the Dell Pay account was charged off and sold without the original creditor having provided required TILA change-in-terms notice or proper pre-charge-off notification.

32. Notwithstanding these known defects, MCM immediately and without investigation reported both accounts as valid delinquent collection items on Plaintiff's credit reports, compounding the harm caused by the original creditors' violations.

## D. Plaintiff's Damages

33. As a direct and proximate result of MCM's unlawful conduct and the original creditors' underlying violations, for which MCM bears successor and independent furnisher liability, Plaintiff has suffered actual damages including, but not limited to:

a. Significant damage to her credit score and creditworthiness resulting in adverse credit reporting across all three major bureaus;

b. Denial of and/or inability to obtain credit, housing, and financing on favorable terms, constituting missed financial opportunities directly caused by the improper derogatory reporting;

c. Emotional distress, anxiety, frustration, humiliation, and loss of sleep arising from the ongoing inaccurate credit reporting, collection activity, and the underlying unauthorized changes to her accounts that were never corrected;

d. Time, effort, and expense incurred over the course of multiple dispute rounds from July 2025 through March 2026 in researching, disputing, and seeking to correct MCM's unlawful reporting; and

e. Out-of-pocket costs including certified mail expenses, credit monitoring fees, and related costs.

## IV. CAUSES OF ACTION

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

*15 U.S.C. § 1692 et seq. – Both Accounts*

**34.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 33 as if fully set forth herein.

**35.** MCM is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) because it regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another.

**36.** MCM violated 15 U.S.C. § 1692g by failing to cease collection activity after Plaintiff timely disputed both debts in writing and by failing to obtain and provide adequate verification of the debts as required by law. MCM's obligation to verify extended to the underlying account histories, including the Best Egg billing dispute and the Dell Pay TILA notice violation.

**37.** MCM violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations in connection with the collection of the alleged debts, including asserting that its records were "accurate" when those records failed to account for the disputed billing history and TILA violations that preceded both charge-offs.

**38.** MCM violated 15 U.S.C. § 1692e(8) by communicating credit information that it knew or should have known was false, including reporting unvalidated debts to credit reporting agencies as valid delinquent obligations following receipt of Plaintiff's written disputes in July 2025, December 2025, and March 2026.

**39.** MCM violated 15 U.S.C. § 1692f by employing unfair or unconscionable means to collect or attempt to collect the alleged debts, including continuing to report inaccurate information to the credit reporting agencies after receiving Plaintiff's written disputes and validation demands and after failing to produce legally required validation documentation.

**40.** As a result of MCM's FDCPA violations, Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. § 1692k(a)(1); (b) statutory damages up to $1,000.00 per violation pursuant to 15 U.S.C. § 1692k(a)(2)(A); and (c) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FCRA)

*15 U.S.C. § 1681s-2(b) – Both Accounts*

**41.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 40 as if fully set forth herein.

**42.** MCM is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2 because it regularly furnishes information relating to consumers to consumer reporting agencies.

**43.** Following Plaintiff's disputes to the credit reporting agencies in July 2025 and December 2025, the credit reporting agencies notified MCM of Plaintiff's disputes as required by 15 U.S.C. § 1681i(a)(2).

**44.** Upon receipt of such notification, MCM was required by 15 U.S.C. § 1681s-2(b) to: (a) conduct a reasonable investigation with respect to the disputed information; (b) review all relevant information provided by the consumer reporting agency; (c) report the results of its investigation to the agency; and (d) if the information was found to be inaccurate, incomplete, or unverifiable, modify, delete, or permanently block the reporting of that information.

**45.** MCM willfully and/or negligently failed to conduct a reasonable investigation into Plaintiff's disputes for both accounts. A reasonable investigation would have required MCM to examine the underlying account histories, including Best Egg's unauthorized payment change and its refusal to correct the resulting billing error, and Comenity Capital Bank's failure to provide required TILA change-in-terms notice. MCM instead rubber-stamped the existing data and reported the accounts as accurate without conducting any meaningful investigation.

**46.** MCM's failure to conduct a reasonable investigation and its continued reporting of inaccurate information constitutes willful and/or negligent non-compliance with the FCRA, in violation of 15 U.S.C. § 1681s-2(b).

**47.** As a result of MCM's FCRA violations, Plaintiff is entitled to: (a) actual damages pursuant to 15 U.S.C. § 1681o(a)(1) or § 1681n(a)(1); (b) statutory damages up to $1,000.00 per willful violation per account pursuant to 15 U.S.C. § 1681n(a)(1)(A); (c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and (d) costs and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2).

## COUNT III – VIOLATIONS OF THE FAIR CREDIT BILLING ACT (FCBA) – BEST EGG ACCOUNT

*15 U.S.C. §§ 1666–1666a – MCM as Successor Furnisher*

**48.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as if fully set forth herein.

**49.** The Best Egg personal loan account constituted an open-end consumer credit plan subject to the protections of the Fair Credit Billing Act, 15 U.S.C. §§ 1666–1666j.

**50.** Best Egg's unauthorized change to Plaintiff's monthly payment amount constituted a "billing error" as defined by 15 U.S.C. § 1666(b), specifically a charge in an "incorrect amount" that was not authorized by Plaintiff.

**51.** Pursuant to 15 U.S.C. § 1666, Best Egg was required to acknowledge Plaintiff's billing dispute within 30 days and to resolve it within two complete billing cycles not to exceed 90 days by either correcting the error or providing a written explanation supported by documentary evidence.

**52.** Pursuant to 15 U.S.C. § 1666a, Best Egg was prohibited from reporting the disputed amount to any credit reporting agency as delinquent and from taking any adverse action based upon the disputed amount while the dispute remained unresolved and until Plaintiff had been afforded at least ten days after resolution to make payment.

**53.** Best Egg violated these requirements by: (a) failing to correct the unauthorized payment amount; (b) charging off the account while the billing dispute remained unresolved; and (c) reporting and selling the account as a delinquent charge-off without affording Plaintiff her statutory rights.

**54.** MCM, as purchaser and successor furnisher of the Best Egg account, assumed the account with knowledge of the underlying billing dispute and continued to perpetuate the harm caused by Best Egg's FCBA violations by reporting the account as a valid collection item without investigating or disclosing the disputed billing history.

**55.** As a result of these violations, Plaintiff is entitled to actual damages, statutory damages, costs, and attorney's fees as permitted by 15 U.S.C. § 1640(a) and the FCBA.

## COUNT IV – VIOLATIONS OF THE TRUTH IN LENDING ACT (TILA) AND REGULATION Z – DELL PAY ACCOUNT

*15 U.S.C. § 1637; 12 C.F.R. § 1026.9(c)(2) – MCM as Successor Furnisher*

**56.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

**57.** The Comenity Capital Bank Dell Pay account constituted an open-end consumer credit plan subject to the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and its implementing regulation, Regulation Z, 12 C.F.R. Part 1026.

**58.** Under Regulation Z, 12 C.F.R. § 1026.9(c)(2), any "significant change in account terms" — including an increase in the annual percentage rate — requires the creditor to provide written

notice to each affected consumer at least 45 days prior to the effective date of the change. This notice requirement is mandatory and cannot be waived by the creditor.

**59.** Comenity Capital Bank changed Plaintiff's interest rate without providing the required 45-day advance written notice as mandated by 12 C.F.R. § 1026.9(c)(2). This change was made without Plaintiff's knowledge and deprived Plaintiff of her right to reject the change, seek alternative credit, or make informed financial decisions regarding the account.

**60.** The undisclosed interest rate change altered the financial terms of the account in a manner that was not agreed to by Plaintiff, contributed to the account balance, and directly preceded the charge-off of the account. The charge-off therefore cannot be considered a valid, uncontested delinquency.

**61.** MCM, as purchaser of the Dell Pay account and subsequent furnisher of information to the credit reporting agencies, acquired the account with knowledge, or constructive knowledge, of the TILA/Regulation Z violation that infected the account's history. By reporting the account as a valid delinquent collection item without disclosing or investigating the underlying TILA violation, MCM perpetuated and compounded inaccurate and misleading information on Plaintiff's credit reports.

**62.** As a result of these violations, Plaintiff is entitled to actual damages, statutory damages of not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1640(a)(2)(A), costs, and attorney's fees pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT V – FAILURE TO PROVIDE PROPER CHARGE-OFF NOTIFICATION AND MCM'S LIABILITY AS SUCCESSOR FURNISHER
*15 U.S.C. § 1681s-2(a) and (b) – Both Accounts*

**63.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 62 as if fully set forth herein.

**64.** With respect to the Best Egg account, Plaintiff was not provided proper pre-charge-off or pre-transfer notice prior to the sale of her account to MCM. This failure deprived Plaintiff of the opportunity to address or cure any alleged delinquency, particularly given that the alleged delinquency arose entirely from Best Egg's own unauthorized change to the payment amount and its subsequent refusal to correct the billing error.

**65.** With respect to the Dell Pay account, Plaintiff was not provided timely, proper 30-day advance written notice prior to the charge-off and adverse credit reporting of the account, in violation of applicable consumer protection requirements and 15 U.S.C. § 1681s-2(a).

**66.** MCM, as purchaser and successor-in-interest on both accounts, acquired said accounts with knowledge, or constructive knowledge, that: (a) the Best Egg account had been charged off and sold in the midst of an unresolved FCBA billing dispute caused by Best Egg's own unauthorized conduct; and (b) the Dell Pay account had been charged off without proper pre-charge-off notice and following an undisclosed TILA interest rate change. MCM chose to accept assignment of and report these accounts notwithstanding these procedural and substantive defects.

**67.** As a furnisher of information under 15 U.S.C. § 1681s-2, MCM bore an independent obligation upon receiving Plaintiff's disputes to investigate whether the underlying account histories — including the defective billing dispute resolution, the unauthorized payment change, the improper interest rate change, and the defective charge-off notification processes — rendered the reported information inaccurate or unverifiable. MCM failed to conduct any such investigation.

**68.** By continuing to report both accounts as valid delinquent collection items after receiving Plaintiff's disputes, despite the foregoing defects, MCM perpetuated and compounded inaccurate adverse information on Plaintiff's credit reports, in violation of 15 U.S.C. § 1681s-2(a) and (b).

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kristina Johnson respectfully requests that this Court enter judgment in her favor and against Defendant Midland Credit Management, Inc., and award the following relief:

a. Actual damages, including damages for emotional distress, anxiety, injury to creditworthiness, missed financial opportunities, and out-of-pocket losses, in amounts to be proven at trial;

b. Statutory damages of $1,000.00 per FDCPA violation per account pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Statutory damages per FCRA willful violation per account pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d. TILA statutory damages of not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1640(a)(2)(A) for the Dell Pay account;

e. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for MCM's willful non-compliance with the FCRA;

f. An Order directing MCM to immediately delete and permanently cease reporting both the Comenity Capital Bank Dell Pay account (MCM Account No. 327443320) and the Best Egg account (Original Account No. 44631839) from Plaintiff's credit files with Experian, Equifax, and TransUnion;

g. An Order enjoining MCM from re-reporting or re-selling either account to any third-party debt collector or reporting agency;

h. Costs of this action and attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1640(a)(3);

i. Pre-judgment and post-judgment interest as allowed by law; and

j. Such other and further relief as the Court may deem just and proper.

## VI. DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff Kristina Johnson hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Kristina Johnson, Pro Se

2329 Newton Drive

Palm Harbor, Florida 34683

Phone: (937) 554-6274

Email: kristinajohnson552@outlook.com

Dated: July___, 2026

---

## CERTIFICATE OF SERVICE

I, Kristina Johnson, hereby certify that on this _____ day of _____, 2026, a true and correct copy of the foregoing Complaint and Summons was served upon Defendant Midland Credit Management, Inc. by process server / United States Certified Mail, Return Receipt Requested, at:

**Midland Credit Management, Inc.**

350 Camino De La Reina, Suite 100

San Diego, California 92108

_____

Kristina Johnson, Pro Se